UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LUVENIA NIX,

                Plaintiff,

      -against-

MARIA CINO, SECRETARY,
DEPARTMENT OF TRANSPORTATION,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
02-CV-4609 (DLI)(VVP)

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff, Luvenia Nix ("Nix"), brings this action against defendant, Maria Cino, Secretary of the United States Department of Transportation,[1] in her official capacity alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant now moves for summary judgment under Fed. R. Civ. P. 56(c). For the reasons set forth below, defendant's summary judgment motion is granted.

**Facts**

Plaintiff, a female of African-American ancestry, has been a part-time employee of the Federal Aviation Administration ("FAA") since 1987. (Compl. ¶ 5.) Beginning in 1992, plaintiff worked in the Human Resources Department of the FAA's regional office at John F. Kennedy International Airport in Jamaica, New York and was responsible for, among other things, processing

---

[1] This action was originally brought against Norman Y. Mineta, in his official capacity as Secretary of the United States Department of Transportation. On July 7, 2006, Mr. Mineta resigned. Since then Maria Cino currently is Acting Secretary until President Bush's nominee, Mary Peters, is confirmed by the United States Senate. Therefore, Maria Cino is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("When a public officer is a party to an action in his official capacity and . . . resigns, the action does not abate and the officer's successor is automatically substituted as a party.").

applications for health benefits, life insurance, workers compensation and processing retirements. (Healey Decl. ¶ 2; Pl.'s Dep. 27: 16-19.) Plaintiff worked part-time, three days a week, for a total of 24 hours. (Pl.'s Dep. 20: 19.) From 1992 to 1998, Patricia Healey directly supervised plaintiff as her Team Leader. (Healey Decl. ¶ 2; Pl.'s Dep. 24: 2-9.) In October 1996, the FAA promoted Ms. Healey to branch manager and appointed Sandra Labissiere, a female of African-American ancestry, as plaintiff's Team Leader. (Healey Decl. ¶ 3.) Both plaintiff and Ms. Labissiere describe their relationship as "hostile." (Pl.'s Dep. 43-44; Labissiere Decl. ¶ 2.)

1. <u>March 1997 Discrimination Complaint</u>

In February 1997, Ms. Healey informed plaintiff that she would not be promoted from a GS-7 to a GS-9 pay level because plaintiff did not complete certain work assignments on time and she failed to meet the Office of Personnel Management's ("OPM") requirement that she have the equivalent of one year of full-time experience as a GS-7 before she could become a GS-9. (Healey Decl. ¶ 4.) Plaintiff was promoted to a GS-7 pay level on or about September 17, 1995 but, because she only worked 24 hours per week, plaintiff was required to work at least 21 months before she would be eligible for a GS-9 promotion. (*Id*.) Two other members of plaintiff's team, Omilana Thomas and Vanetta Simmons, both females of African-American ancestry who worked full-time in the same position as plaintiff, were promoted at that time from a GS-7 to a GS-9. (*Id.*)

In March 1997, plaintiff filed a request for Equal Employment Opportunity ("EEO") counseling with the Department of Transportation Office of Civil Rights, claiming that she was not promoted because of her race and gender. (Pl.'s Dep. 53; Healey Decl. ¶ 5.) However, at her deposition in this action, plaintiff stated that Ms. Healey did not promote her because she did not like plaintiff and "because she could." (Pl.'s Dep. 59-60; 74.)

2. August 1997 Letter of Reprimand

In April 1997, plaintiff sought permission from Ms. Healey to attend a training session in Lancaster, Pennsylvania on Monday, May 12, 1997. (Healey Decl. ¶ 6.) Ms. Healey granted plaintiff permission to attend the session on the condition that plaintiff train her co-workers on what she learned upon her return. (*Id*.) Ms. Labissiere repeatedly asked plaintiff to confirm a date for the training, but plaintiff refused to do so. (Pl.'s Dep. 94: 22-25; 126: 7-14; Labissiere Decl. ¶ 3.) On Wednesday, May 7, 1997, plaintiff's last day in the office before the training session, Ms. Labissiere sent plaintiff an email again requesting that plaintiff provide a date for training her co-workers. (Labissiere Decl. ¶ 4.) Plaintiff did not respond to the email. Ms. Labissiere then approached plaintiff's desk to try and obtain a date from plaintiff for the training. (*Id*.) Plaintiff responded by telling Ms. Labissiere to "leave me alone" and to "get out of my face." (Labissiere Decl. ¶ 5; Pl.'s Dep. 96-98; 120-21.)

The next day Ms. Labissiere called plaintiff at her home and sent her a letter to inform her that Ms. Healey had revoked plaintiff's permission to attend the training session due to plaintiff's inappropriate response and unwillingness to train her co-workers. Ms. Labissiere also instructed plaintiff to call Ms. Healey at the office and to report to the office for work on Monday, May 12, 1997. (Healey Decl. ¶¶ 8-9; Pl.'s Dep. 103-06.) Plaintiff ignored both requests. (*Id*.) Instead, plaintiff called Office of Civil Rights representative, Sandra Concepcion. (*Id*.)

In response to this incident, Ms. Healey issued plaintiff a proposed Letter of Reprimand on June 10, 1997, charging plaintiff with disorderly conduct and disobeying a supervisor's direction. However, in the finalized Letter of Reprimand, dated August 1, 1997, Ms. Healey rescinded the disobeying an order charge, and only reprimanded plaintiff for disorderly conduct. (Healey Decl. ¶

10.) The Letter of Reprimand did not affect plaintiff's work responsibilities, seniority, pay or job benefits. (Pl.'s Dep. 129: 17-25.)

3. November 1997 Administrative Leave

On November 10, 1997, Ms. Labissiere informed plaintiff that she was being promoted to the GS-9 pay level. (Labissiere Decl. ¶ 7.) Ms. Labissiere contends that plaintiff responded hostilely to the news. (*Id.*) Later that day, Ms. Labissiere and three of plaintiff's other team members overheard plaintiff make remarks on the telephone including, among other things:

- "They are gonna pay for this."

- "They think they can throw me a bone and I'll be happy."

- "I don't care who hears me."

- "They are all rats anyway."

- "I am going to get every last one of them."

- "I don't care if she is Black, I'm gonna hang her."

- "They gotta act like the KKK - so now they're gonna pay for it . . ."

(Labissiere Decl. ¶¶ 8-10; *see also* Ex. B, C.) The other team members told Ms. Labissiere that they felt personally threatened by the statements. (*Id*.) Consequently, Ms. Labissiere allowed them to work at other stations for the afternoon. (Labissiere Decl. ¶ 10.)

After consulting with Frank Schurott of the Department of Transportation's Civil Aviation Security Division on November 12, 1997, Ms. Healey placed plaintiff on Administrative Leave until an investigation of the incident could be conducted. (Healey Decl. ¶¶ 11-12.) Officers from the Civil Aviation Security Division conducted the investigation that day and found that plaintiff had not violated the FAA's Violence in the Workplace rules. (Healey Decl. ¶ 12; *see also* Ex. 3.)

Consequently, plaintiff was permitted to return to work on November 17, 1997, the next day she was regularly scheduled to work. (*Id.*)

In response to the incident, Ms. Healey issued plaintiff a Notice of Warning, dated March 31, 1998. (Healey Decl. ¶ 13; *see also* Ex. 4.) According to Ms. Healey, the Notice of Warning constituted regressive discipline because, ordinarily, after a Letter of Reprimand is issued, the next time disciplinary action is required, the individual is either suspended or receives a stronger Letter of Reprimand. (Healey Decl. ¶ 14.) However, Ms. Healey chose to issue a Notice of Warning, which is considered a lesser disciplinary action than a Letter of Reprimand. (*Id.*) Throughout the incident, plaintiff did not lose any pay nor was her employment status affected in any way. (Pl.'s Dep. 147; 153.)

On August 20, 2002, plaintiff filed the complaint in the instant action. On June 17, 2005, defendant filed the instant motion for summary judgment. Plaintiff did not file opposition papers.

## Discussion

**I. Summary Judgment Standard**

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

The Second Circuit has recognized that courts must be cautious when granting summary judgment in employment discrimination cases because the employer's intent is frequently at issue. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1998); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 989, 998 (2d Cir. 1989). However, the Second Circuit has maintained that summary judgment may still be appropriate "even in the fact-intensive context of discrimination cases." *Abdu Brisson v. Delta Airlines Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The function of the court on a motion for summary judgment in an employment discrimination case "is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" *Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 204 (2d Cir. 1995) (*quoting Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994)).

Although Defendant's summary judgment motion is unopposed, and the facts stated in the Defendant's Local Rule 56.1 statements are deemed admitted for the purpose of this motion, the moving party must still meet its burden of demonstrating that no material issue of fact exists. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). Additionally, each of the facts in Defendant's 56.1 statement must also be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56 (e). *See also*, E.D.N.Y. Local Civ. R. 56.1 (d). "Thus, it is clear that even when a non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden

of demonstrating that no material issue of fact remains for trial." *Amaker*, 274 F.3d at 681. "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statements of undisputed facts contained in the moving party's Rule 56.1 statement." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004). If the evidence in support of the summary judgment motion does not meet this burden, summary judgment must be denied "*even if no opposing evidentiary matter is presented.*" *Amaker,* 274 F.3d at 681 (emphasis in original).

**II. Retaliation**

Title VII prohibits employers from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter . . . ." 42 U.S.C. § 2000e -3(a). To determine whether summary judgment is appropriate in a Title VII retaliation claim, we apply the three-part burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under the *McDonell Douglas* framework, the plaintiff carries the initial burden of proving a prima facie case of retaliation. *Id*. The defendant may then rebut by articulating a legitimate, nondiscriminatory reason for its adverse employment action. The defendant's burden at this stage is merely one of production, not persuasion. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). However, once the defendant meets this burden, "the presumption of [retaliation] 'drops out of the picture.'"*Id.* at 509. The burden then shifts back to the plaintiff to present sufficient evidence to permit a rational finder of fact to infer that the defendant's proffered reason is a pretext and that the

employment decision was motivated by unlawful discrimination. *See Stern v. Trustees of Columbia Univ. in the City of New York,* 131 F.3d 305, 312 (2d Cir. 1997).

### A. **Plaintiff has Failed to Establish a *Prima Facie* Case**

In order to survive a motion for summary judgment, the employee's burden of proof at the prima facie stage is *de minimus*. *See Bennett v. Watson Wyatt & Co.,* 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001). However, the employee must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive. *See Cronin.,* 46 F.3d at 204. To make out a prima facie case of retaliation, the employee must demonstrate: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Hunter v. St. Francis Hosp.,* 281 F. Supp. 2d 534, 546 (E.D.N.Y. 2003) (*citing Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998)). A causal connection may be established by showing that the retaliatory action occurred close in time to the protected activity. *Id.* at 547.

In the instant case, plaintiff claims that the FAA retaliated against her by issuing a Letter of Reprimand in August 1997, placing her on Administrative Leave in November 1997, and giving her a Notice of Warning in March 1998 because she filed the request for EEO counseling in March 1997. While plaintiff has raised a genuine issue of material fact that a causal connection exists due to the close time proximity between the EEO claim and the alleged retaliatory actions, for the reasons stated below, plaintiff has failed to establish a prima facie case of retaliation because the requisite protected activity and adverse employment action elements are not met.

1. Protected Activity Known to Defendant

Plaintiff contends that her March 1997 EEO claim constituted a protected activity known to the defendant. However, defendant argues that plaintiff's EEO claim does not constitute a protected activity because it was not asserted in good faith. To establish participation in a protected activity, the employee need not prove that the conditions against which she protested actually amounted to a violation of Title VII; rather, the employee must demonstrate only a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. *See Manoharan v. Columbia Univ. College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988). When plaintiff filed the EEO claim in March 1997, she asserted that she was denied the promotion to a GS-9 level in February 1997 because of her race and gender. (Pl.'s Dep. 53.) However, plaintiff later admitted at her deposition that the promotion denial was not because her race or gender, but instead it was because her supervisor did not like her. Plaintiff stated:

> Q: Why do you believe that Patricia Healey wanted to deny you the promotion to which you were due? What is the reason you felt she wanted to deny you the promotion?
> A: The reason I feel?
> Q: Yes.
> A: Because she could.
> Q: Because she could, because she didn't like you?
> A: Yes.

(Pl.'s Dep. 74-75.) Moreover, plaintiff was aware at the time of her EEO filing that, in February 1997, Ms. Healey had promoted from a GS-7 to a GS-9 pay level two other females, both of African-American ancestry who worked full-time in the same position as plaintiff, Omilana Thomas and Vanetta Simmons. (Pl.'s Dep. 52-53; Healey Decl. ¶ 4.) Thus, because plaintiff's EEO filing regarding the promotion denial was not an "action taken to protest or oppose statutorily prohibited

discrimination," the March 1997 complaint does not constitute a protected activity. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000).

2. <u>Employment Action Disadvantaging the Plaintiff</u>

Even assuming that plaintiff established the protected activity element, the August 1997 Letter of Reprimand, March 1998 Notice of Warning and November 1997 Administrative Leave do not amount to adverse employment actions. The Second Circuit has defined an "adverse employment action" to mean a "materially adverse change in working conditions [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). For instance, termination of employment, demotion evidenced by a decrease in a wage or salary, material loss of benefits and significantly diminished material responsibilities would constitute materially adverse changes. *Id.*

Here, neither the Letter of Reprimand nor the Notice of Warning constituted materially adverse changes because, as Plaintiff admits, she did not suffer a decreased pay or material loss in benefits, nor were her job responsibilities altered in any way. (Pl.'s Dep. 129: 17-25; 147; 153.) Mere reprimands or threats of disciplinary action, absent any other negative results, such as a decrease in pay, do not qualify as an adverse employment actions. *See Bennett,* 136 F. Supp. 2d at 248; *see also Stembridge v. City of New York,* 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action); *Castro v. NYC Board of Education Personnel,* No. 96 Civ. 63140, 1998 WL 108004, at *7 (S.D.N.Y. 1998)

("[A]lthough reprimands . . . may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

Similarly, the Second Circuit recently held that placement on administrative leave, with pay, during an investigation does not constitute an adverse employment action. *Joseph v. Leavitt,* No. 05, Civ. 3348, 2006 WL 2615313, at *3 (2d Cir. 2006). The court in *Joseph* reasoned that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its pre-existing disciplinary policies in a reasonable manner." *Id.* Here, the administrative leave reasonably conformed with pre-existing disciplinary policies because Frank Schurott of the Department of Transportation's Civil Aviation Security Division recommended the leave until an investigation of the incident could be conducted. (Healey Decl. ¶ 11.) The investigation was carried out that day, and, once it revealed that plaintiff had not violated the FAA's Violence in the Workplace rules, plaintiff was permitted to return to work the next day. (Healey Decl. ¶ 12.) Consequently, the leave only lasted one day and plaintiff was paid for the day, without any material change to her work benefits or job responsibilities. (Pl.'s Dep. 147; 153.) Moreover, Ms. Healey testified that she followed the lesser form of discipline by issuing a Notice of Warning even though, under the circumstances, the issuance of a Letter of Reprimand would have been justified. (Healey Decl. ¶ 14.) Therefore, the disciplinary actions taken here, a Letter of Reprimand, a Notice of Warning and Administrative Leave, without more, do not constitute adverse employment actions.

Accordingly, plaintiff has failed to establish a prima facie case of retaliation.

### B. Defendant Provided a Legitimate Explanation

Assuming *arguendo* that plaintiff has established a prima facie case of retaliation, the burden then shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the employment decision. *See McDonnell Douglas,* 411 U.S. at 802. To meet this burden, the defendant need only articulate, but not prove, the existence of a nondiscriminatory reason. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981). Here, the defendant has articulated legitimate nondiscriminatory reasons for the Letter of Reprimand, the Notice of Warning and the Administrative Leave, and plaintiff has failed to show pretext.

First, defendant argues that plaintiff's inappropriate responses and refusals to obey an order provided the basis for issuing the Letter of Reprimand, not plaintiff's March 1997 EEO claim. Given the "low threshold" that the defendant must meet at this stage, there is no doubt that responses such as "leave me alone" and "get out of my face" to Ms. Labissiere's attempt to obtain from plaintiff a date to train her co-workers and ignoring a telephone message and letter plaintiff received at her home requesting that she call Ms. Healey at the office constituted legitimate, nondiscriminatory grounds for the Letter. *See Gorley v. Metro-North Commuter R.R.,* No. 99 Civ. 3240, 2000 WL 1876909, at *6 (S.D.N.Y. Dec. 22, 2000); (Pl.'s Dep. 96-98; 103-06; 120-21.) Second, plaintiff's November 10, 1997 telephone conversation during which she made statements such as, "I don't care if she is Black, I'm gonna hang her," and "I am going to get every last one of them," that plaintiff's co-workers found to be personally threatening, and that led to a prompt, brief investigation, constituted a legitimate, non-discriminatory reason for the Administrative Leave. (Labissiere Decl. ¶¶ 8-10; *see also* Ex. B, C.) Third, plaintiff's hostile behavior toward Ms. Labissiere, along with the numerous instances of

disorderly and inappropriate conduct in the office, constituted a legitimate basis for the Notice of Warning.

### C. Plaintiff Has Failed to Show Pretext

Once the defendant articulates legitimate nondiscriminatory reasons for the adverse employment action, plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). In the summary judgment context, the Second Circuit has held that "[t]he ultimate question is whether the employer intentionally discriminated, . . . '[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'" *James v. New York Racing Assoc.,* 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves,* 530 U.S. at 147).

The only evidence plaintiff presents to counter defendant's proffered nondiscriminatory reasons is her assertion that Ms. Healey issued the Notice of Warning *after* the Civil Aviation Security Division's investigation found that plaintiff had not violated the FAA's Violence in the Workplace rules. (Healey Decl. ¶ 13; *see also* Ex. 3; 4.) However, as indicated above, the investigation was prompted solely by plaintiff's November 10th telephone conversation whereas Ms. Healey issued the Notice of Warning based on numerous incidents of inappropriate behavior and disorderly conduct. (Healey Decl. Ex. 4.) Furthermore, the Notice of Warning constituted regressive discipline because, ordinarily after one Letter of Reprimand has been issued, the next time disciplinary action is required, the individual is either suspended or receives a stronger Letter of

Reprimand. (Healey Decl. ¶ 14.) Finally, plaintiff did not lose any pay, nor was her employment affected in any way on account of the Notice. (Pl.'s Dep. 147; 153.)

Accordingly, plaintiff has failed to demonstrate that the subsequent Notice of Warning was a pretext for discrimination.

**Conclusion**

For the reasons set forth above, defendant's motion for summary judgment is granted. The complaint is dismissed without costs to either party.

SO ORDERED.

DATED: Brooklyn, New York
September 21, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge